## D. C. Luna v. The State.

No. 2607.   Decided February 18, 1903.

**1.—Perjury—Indictment.**

See statement for an indictment for perjury held sufficient.

**2.—Same—Materiality of Testimony—Charge.**

On a trial for perjury, it was error for the court, in its charge, to submit the materiality of the testimony to be determined by the jury. The materiality of the testimony is usually a question for the court and not the jury. The exception to this rule is, when the materiality is a mixed question of law and fact.

**3.—Same—Assigned Upon an Affidavit—Instructions.**

On a trial for perjury assigned upon an affidavit, where such issue was raised by the testimony, it was error to refuse a special instruction to the effect that the jury should acquit if they believed that the defendant, at the time he made the affidavit, believed that the statements therein were true, or he believed he had reasonable grounds upon which to predicate the affidavit.

**4.—Same—Evidence.**

On a trial for perjury assigned upon an affidavit made by defendant, in which he charged one H. and another party with theft of the money, it was competent to prove by H. that, on the morning before he missed the money, defendant made an assault upon H. and threatened to cut his (H.'s) throat if he had taken his money. This testimony tended to show the condition of defendant's mind, and his belief that H. had gotten the money as stated in the affidavit, and bore upon the question as to whether the statements in his affidavit were willfully made.

**5.—Same.**

On a trial for perjury assigned upon an affidavit made by defendant, in which he stated that two of his tenants had stolen his money, facts going to show that said tenants were acting together, and which suggested to defendant the belief that they got his money, and which were known to him when he made the affidavit, were admissible in evidence, and it was error to exclude such testimony.

Appeal from the District Court of Titus. Tried below before Hon. J. M. Talbot.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The charging part of the indictment is as follows, viz: "That D. C. Luna on or about the 5th day of June, one thousand nine hundred and one, and anterior to the presentment of this indictment in the county of Titus and State of Texas, did then and there personally appear before D. W. Ellis the legal qualified and acting justice of the peace in and for precinct number one in and for Titus County Texas, and the said D. C. Luna did then and there take his corporal oath which oath is in writing and as follows to wit: "Search warrant complaint and affidavit." Enterprise Print. "The State of Texas, County of Titus. No. 1268. Justice's Court Precinct No. one. Before me the undersigned authority a justice of the peace in and for said county and State this day personally appeared D. C. Luna who being duly sworn deposes and says that in Marshall Springs in said county and State on or about the 2nd day of June A D. 1901, Virgill Hazlewood and Tom Horn did commit the crime of theft from the person of D. C. Luna of the following described property, viz: one hundred & ten dollars (meaning one hundred and ten dollars in money) of the probable value of one hundred & ten dollars contrary to law and against the peace and dignity of the State of Texas, your affiant has good cause to believe that said property is kept and secreted on D. C. Luna farm & one Tom Horn's farm in Titus county and prays that a search warrant may issue to search the above described premises and bring said property into court for further investigation that justice may be done. D. C. Luna sworn to and subscribed before me this 5 day of June 1901.

"D. W. Ellis Justice of the Peace Precinct (1) Titus County, Texas, and which said written instrument has the following endorsement across the same on the back. "No——. Affidavit for search warrant. The State of Texas vs Tom Horn and Virgil Hazlewood. Filed before me this 5 day of June A. D. 1901. D. W. Ellis J. P. Titus County Filed June 9th 1901. D. W. Ellis Justice of the peace for Precinct No. one Titus County Texas," which said oath being then and there duly and

legally administered to him by D. W. Ellis Justice of the peace as afore-said who was then and there authorized by law to administer the same and which said oath was so administered for the ends of· public justice whereupon it then and there became and was a material inquiry before said justice of the peace aforesaid and necessary for the due adminis-tration of the Criminal Law, of said State whether one Tom Horn did in Titus County Texas on or about the 2nd day of June A. D. 1901, did commit the crime of theft from the person of D. C. Luna of the follow-ing property towit: One hundred and ten dollars, in money of the value of one hundred & ten dollars without the consent of the said D. C. Luna and without his knowledge and with the intent to deprive the said Luna of the value of the same and to appropriate the same to the use and benefit of him the said Tom Horn and the said D. C. Luna did on the 5th day of June A. D. 1901, in said county of Titus and State of Texas, before and to the said D. W. Ellis Justice of the peace as aforesaid under the sanction of said oath administered ·to him as aforesaid willfully and deliberately state and testify that the said Tom Horn did in Titus County and State of Texas, on or about the 2nd day of June A. D. 1901, did commit the crime of theft from the person of D. C. Luna of the following described property, one hundred and ten dollars in money of the value of one hundred & ten dollars con-trary to law and against the peace and dignity of the State of Texas, whereas in truth and in fact the said Tom Horn did not in Titus County Texas on or about the 2nd day of June A. D. 1901, commit the crime of theft from the person of D. C. Luna of the following de-scribed property, one hundred and ten dollars in money of the value of one hundred and ten dollars, contrary to law and against the peace and dignity of the State of Texas, which said statement so made by the said D. C. Luna before and to the said D. W. Ellis Justice of the peace as aforesaid was willfully and deliberately false and the said D. C. Luna knew the same to be false when he made it, against the peace and dig-nity of the State."

Defendant made a motion to quash the indictment upon the follow-ing grounds, viz: "(1) Because it does not allege as shown that the oath upon which perjury is assigned· was made in the course of a judicial proceeding, nor that the same was necessary for the ends of public jus-tice, nor for the enforcement or defense of a private right, nor one re-quired by law. (2) Because the alleged false oath upon which perjury is assigned is not one required by law; or necessary for public jus-tice; or for the prosecution or defense of a private right. (3) Because the indictment does not allege that the alleged false oath was made in the course of a judicial proceeding, nor that the same was a material inquiry at the time it is alleged to have been made. Wherefore defend-ant prays the court to quash said bill of indictment."

The motion to quash was overruled.

The opinion sets out the important facts adduced in evidence at the trial.

*Pounders & Burford* and *Glass, Estes & King,* for appellant.—To be sufficient, the indictment must aver that the oath was legally administered under the circumstances in which an oath or affirmation is required by law, or was necessary for the prosecution or defense of a private right, or was necessary for the ends of public justice. See Penal Code, art. 201.

The indictment must allege that the alleged false statement was material, and the proof must show that it was material. Smith v. State, 1 Texas Crim. App., 620.

To be assignable as perjury, it is essential under the law of Texas that the matter alleged in the indictment to be false be material. Williams v. State, 28 Texas Crim. App., 301; Agar v. State, 29 Texas Crim. App., 605; Brooks v. State, Id., 582.

We respectfully submit that the matter in this indictment alleged to be false, viz., whether or not Tom Horn stole said money, was not and is not material. The inquiry material in this case was as to whether or not the money alleged to have been stolen was secreted in Tom Horn's house, or Virgil Hazlewood's room in defendant's house, to the end that it might be brought into court to be restored to the owner. In a complaint for a search warrant the complainant should give the name of the person accused, not necessarily the name of the person he accuses, but the name of the party accused, no matter how or by whom. In this case there was no warrant of arrest applied for, and none was issued; neither Horn nor Hazlewood was arrested. The defendant may have hoped by searching for the money he had lost, he would secure sufficient testimony to have the parties arrested.

If perjury is committed in the course of a judicial proceeding the indictment must allege that fact, and must also allege that the court or tribunal had jurisdiction of the matter under investigation either as oyer and terminer, or as an examining court. This was an affidavit made in the course of a judicial proceeding. 2 Texas Crim. App., 479. The indictment does not allege that the affidavit was made in the course of a judicial proceeding, nor that the court had jurisdiction of the matter under investigation. Langford v. State, 9 Texas Crim. App., 283.

*Howard Martin,* Assistant Attorney-General, for the State

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of perjury, and his punishment assessed at confinement in the penitentiary for a term of two years.

The indictment was attacked in several particulars. Without entering into a discussion of the various questions assigned, we are of opinion after a careful examination, that it is sufficient.

It is urged that the court's charge is fatally eroneous, in submitting the question of the materiality of the evidence to the jury, as a fact to be determined by them. We believe this exception is well taken. The materiality of testimony upon which perjury is assigned usually is a

question for the court, and not the jury. While it may be true that it might be a mixed question of law and fact in some cases, this is not true as to the case before us.

Appellant tendered a special instruction to the court, ·in which he requested the submission of his theory; that is, if they should find he believed at the time he made the affidavit that the statements were true, he should be acquitted. Under the facts, this charge should have been given.

He further requested the jury be charged that, if defendant believed he had. reasonable grounds upon which to predicate the affidavit that Tom Horn and Virgil Hazlewood took his money, they should acquit. A few facts might be stated, to show that this charge should have been given. Milner testified: That in going out from town in a wagon with defendant and Hazlewood, defendant proposed that Hazlewood and Milner should assist him in concocting a scheme by which they would get a couple of fine mares from Horn; that appellant on the following day should put $110 in his pocket, and go to the residence of his stepson, Stevens, and display this money, and pretend to be very drunk, then take Horn riding, and thereafter deliver the money to his wife, and bring an accusation against Horn, charging him with theft of the money. Defendant was then to obtain, as a compromise with Horn, the mares; appellant paying Milner $25, and Hazlewood $10, for their aid and assistance in the execution of the scheme. Appellant went to Stevens, and subsequently took Horn riding, and was either very drunk or pretended to be so. That Horn went with appellant to appellant's residence, and Hazlewood assisted him in carrying appellant into the house, where they placed him on the bed. During the night, appellant waked up about 3 o'clock in the morning, and discovered his money was gone. He immediately woke his wife and made inquiry of her in regard to it, as well as of Hazlewood, who was sleeping in the house. Hazlewood and Horn were tenants of appellant. Appellant began to inquire about his money; instituted search and investigation early in the morning, after he missed it at night. Horn went to Hazlewood and told him that the elder Milner intended prosecuting him (Hazlewood) for disturbing the peace, and advised him to leave the country. Appellant's son and appellant instituted investigation as to whether the elder Milner had instituted proceedings against Hazlewood, and discovered that to be false. Appellant's son went to Hazlewood about the matter, and Hazlewood promised to see the elder Milner and make inquiries himself, started in that direction, was gone a short while, and returned. Becoming suspicious, the younger Luna followed the tracks of Hazlewood, and discovered that he did not go to see Milner about the matter, and so informed him. Hazlewood admitted that he did not, and further stated that Horn had gotten him into all this trouble, and he that was going down in the field and "whip hell out of him," and, pointing to Horn's house, said, "He has gotten me into all this trouble, and he now has your father's money in his house." Hazle-

wood fled the country. These are the circumstances that induced appellant to make the affidavit charging Horn and Hazlewood with the theft of his money, and asking for a search warrant. Under this state of case, the charges requested by appellant should have been given.

Appellant offered to prove by Hazlewood that he made an assault upon witness with a knife, and told witness, if he (defendant) knew that he (Hazlewood) had gotten his (defendant's) money, he would cut witness' throat; that, on account of said threats, Hazlewood left the country. This testimony should have been admitted. The State predicated perjury upon the fact that he charged Horn and Hazlewood with the theft of the money. It is always a question, upon a trial for perjury, whether the statements were willfully and falsely made. If defendant had reason to believe Hazlewood and Horn—either or both—got his money, the falsity of the testimony against him might be met by this as a circumstance in his favor. This testimony, occurring the following morning after he missed his money at night, went to show the condition of defendant's mind, and his belief in regard to what became of his money.

Another bill shows that after Horn had testified that he went into the field where Hazlewood was at work, and told Hazlewood that Milner was going to prosecute him for disturbance of the peace, defendant offered to prove that on the evening of the same day Horn again went to Hazlewood, where he (Hazlewood) was at work in the field, and told him that he (Hazlewood) was a single man, and ought to leave the country before said Milner indicted him for disturbing the peace on June 1, 1901, and that said Horn then and there advised Hazlewood to leave the country. The first conversation, which was admitted, was of the same character, but not so extended, as the latter. This testimony, if true, shows that Horn was trying to induce Hazlewood to leave the country, and was a circumstance, connected with the other circumstances, which would tend to prove appellant's theory that Hazlewood and Horn were acting together, and suggested to appellant the belief that they got his money; and it should have been admitted. These facts were known to appellant when he made the affidavit.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*